BOOK (UNITED STATES v.). See Case No. 14,624.

BOOKER, The HELEN E. See Case No. 6,330.

BOOM CO. (MASON v.). See Case No. 9,232.

## Case No. 1,638.

BOOMER et al. v. UNITED POWER PRESS CO. et al.

[13 Blatchf. 107; 2 Ban. & A. 106.][1]

Circuit Court, S. D. New York. Aug. 23, 1875.

PATENTS—CHEESE PRESSES — REISSUE — ASSIGN-MENT — ACTION FOR INFRINGEMENT — MEASURE OF DAMAGES—INJUNCTION.

1. Letters patent were granted to George B. Boomer, Rufus E. Boschert and Thomas G. Morse, November 1st, 1870, for an "improvement in cheese presses." They were reissued to Boomer and Boschert, January 28th, 1873. The claim of the original patent was, "A cheese press, composed of the double frame A, a, A', the press beam B, h, H, sliding standards G, G, double levers C, C, nuts e, and the screw D, with a hand-wheel F, and square end d, all constructed, arranged and operating substantially as described." The claim of the reissue was: "In combination with the sliding standards, supported laterally and guided in the frame of the press, the double screw-shaft supported in or against the sliding standards, substantially as and for the purpose described." It was contended that the reissued patent was for a different invention from the original patent, because the claim of the reissue did not include in the combination the press beam, the double levers and the nuts. The invention was an improvement in a press in which double levers and a press beam were necessary, and they were fully described in the specification, and the only ingredients which entered into the invention were those specified in the claim of the reissue: Held, that the objection was not tenable.

[Cited in McWilliams Manuf'g Co. v. Blundell, 11 Fed. 420.]

2. As the claim of the reissue embraces the improvement invented, and the elements of the invention are operative in connection with the mechanism described in the specification, the claim is not invalid because the elements specified in it do not, of themselves, accomplish anything.

3. The reissue is not invalid for want of novelty.

4. The plaintiffs, after bringing this suit, conveyed away their exclusive right to the patent for all of the United States, except the New England states and Ohio, reserving their rights "so far as they are connected with said suit, with the profits and damages therein, and the right to have said patent declared valid, and for an injunction:" Held, that the plaintiffs reserved no right to damages or profits for infringements committed after the conveyance, and were entitled to a decree for the damages and profits down to the time of the conveyance, but not to an injunction.

[In equity. Bill by George B. Boomer and Rufus E. Boschert against the United Power Press Company and others for an accounting, and for an injunction to restrain the infringement of patent No. 108,753. A decree was given for complainants for an account, and directing an ascertainment of damages to April 10, 1874, with costs.]

William B. Smith and Andrew J. Todd, for plaintiffs.

John Van Santvoord, for defendants.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 2 Ban. & A. 106; and here republished by permission.]

SHIPMAN, District Judge. This is a bill in equity, filed February 5th, 1874, praying for an account and an injunction.

Letters patent for an "improvement in cheese presses" were granted to the complainants, and to Thomas G. Morse, on November 1st, 1870. A reissue was granted to the complainants on January 28th, 1873, Morse having previously assigned his interest in the invention to Boomer. The United Power Press Company, one of the defendants, is a corporation established in the city of New York, of which corporation the other defendants are the trustees. The defendants are charged with the infringement of the reissued letters patent in the city of New York. The complainants, on April 10th, 1874, granted and conveyed to the Boomer and Boschert Press Company all their interest in the invention which was secured by the reissued letters patent, for all of the United States, except the New England states and the state of Ohio. On the same day the grantees executed an agreement, the material portions of which are as follows: "And whereas, a suit is pending against the United Power Press Co., instituted, among other things, to establish the validity of said reissued letters patent, and for an injunction; and whereas, said Boomer and Boschert have, in fact, assumed to have a good title to said letters patent, and the invention therein described, and have undertaken to carry forward said suit to a successful termination, if possible: Now, then, it is understood, that all their rights under said reissued letters patent, so far as they are connected with said suit, with the profits and damages therein, and the right to have said patent declared valid, and for an injunction, are not to be affected by said patent deed, but the same is subordinate to said rights." The answer avers that the reissued patent is not for the same invention for which the original letters patent were issued, denies the novelty of the alleged invention, and denies infringement.

The alleged invention of the patentees related to an improvement in that class of presses known as toggle-lever presses. An ordinary toggle-lever press consists of a frame having a base and head-block suitably connected by rods or posts, in which frame runs a follower. The follower is elevated or lowered by two toggle-levers jointed at their centres, which levers are operated by a right and left-hand screw-shaft passing through the knuckles of the levers. The defect in this kind of press arises from the fact that, when the resistance under the follower is unequal, the follower tips at the end where there is the least resistance. This depression of the platen or follower, causes the arms of the lever on the side of greater resistance to become more angular than the arms of the opposite lever, and the lozenge-shaped configuration of the four arms of the levers becomes distorted. This distortion causes an endwise motion of the screw-shaft towards the side of the press where the arms of the lever are more angular, and the side of greater resistance. Consequently, the end or side of the press where the greatest pressure is needed, becomes least capable of exerting such pressure, and the action of the press becomes unequal. Prior to the complainants' invention, this defect in toggle-lever presses was of a very serious character, for the usefulness of such presses depends upon the uniformity with which the platen is kept level, and the uniformity of the pressure under the platen. The alleged invention of the patentees consisted in constructing sliding standards, the lower ends of which are attached to the platen, and the upper ends extend through a socket in the head-block. When one end of the platen is depressed, these standards tend to incline towards the side of least resistance, and in an opposite direction from that towards which the screw-shaft tends to move. In order that these opposing tendencies may be made to counteract each other, a central hub is attached to the screw-shaft between the standards. When the standards incline to the side of greatest depression, this central hub or bearing, being attached to the screw-shaft, comes in contact with the standard, prevents its further movement, and, at the same time, by its pressure upon the standard, prevents the movement of the screw-shaft to the side of greatest resistance. One of the patentees describes the manner in which the follower is kept level by this invention, notwithstanding the resistance may be greater under one side of the follower than under the other side, as follows: "It (the follower) will be kept level, or very nearly so, because, if the resistance is greater under, say, the right end of the follower, the tendency is to depress the left end, which would draw the standards to the left; but, if the follower is depressed at the left, the left pair of arms or toggle-levers will become straighter than those on the right, and the screw will move to the right, bringing its central bearing in contact with the standards, which will prevent both the movement of the screw to the right and the standards to the left. The two opposite movements are thus made to counteract each other, and the power of the press is kept in equilibrium." The principle of the invention is, that the active force exerted by the movable standards and the hub, at the instant when the tendency of the screw-shaft to deflect commences, is more efficacious than a much greater amount of resistance which can be exerted by fixed bearings or posts, and that the tendency to distortion is easily overcome by making the opposite movements of standards and screw-shafts to counteract each other. The press of the plaintiffs has been largely sold, and is a highly useful improvement.

The two styles of machines which the de-

fendant corporation manufactured and sold, in the city of New York, prior to April 10th, 1874, differ only in immaterial details from the press of the complainants. In the defendants' press there is but a single sliding standard, and, instead of the complainants' central hub, collars are attached to the screw-shaft on each side of the standard. It is virtually conceded by the witnesses for the defendants, that their machines embody the invention which is claimed in the complainants' reissued patent, and differ from the complainants' machine in form only and not in substance.

The defendants contend, first, that the reissued patent is void, because it is not for the same invention as the one which was claimed in the original patent. The claim in the original patent was as follows: "A cheese press, composed of the double frame A, a, A', the press-beam B, h, H, sliding standard G, G, double levers C, C, nuts e, and the screw D, with a hand-wheel F, and square end d, all constructed, arranged and operating substantially as described." The reissued patent also contains a single claim, as follows: "In combination with the sliding standards, supported laterally and guided in the frame of the press, the double screw-shaft supported in or against the sliding standards, substantially as and for the purpose described." The defendants insist that two material parts of the originally patented invention, to wit, the press-beam or platen, and the toggle-levers and nuts, have been dropped in the reissued claim, and that these omissions constitute a material change in the reissue, as compared with the original patent, and that the reissued patent attempts to secure combinations fewer in number than the whole described in the original patent. The improvement which is declared in both the original and reissued patents to have been invented by the patentees, is an improvement in a toggle-lever press, in which toggle-levers and a platen must necessarily be found. The specification of the reissued patent describes fully, and in substantially the same terms which are employed in the original patent, the manner in which the whole press is constructed. The claim of the reissued patent embraces, in comprehensive terms, the actual invention, and describes what is claimed to be new, and it was not necessary to mention, in that part of the specification, that toggle-levers and a platen were also used in the press. The only ingredients which entered into the invention for which the original patent was granted, are those which are specified in the claim of the reissued patent.

The defendants insist, in the next place, that the complainants' patent is invalid, because the elements which are specified in the claim as forming, in combination, the invention, do not of themselves perform or accomplish anything. The claim is properly confined to the invention, and specifies only the improvement which the patentees invented. The elements of the invention are operative in connection with the mechanism of the press, which is accurately described in the specification.

The defendants contend, thirdly, that the complainants' patent is void, in view of the previous state of the art, as shown in the presses which are described in the patent of Robert Harding, of September 3d, 1842; in the patent of P. G. Gardner, of February 28th, 1845; in the patent of Nathan Chapman, of January 12th, 1858; in the patent of Pickens B. Wever, of August 21st, 1860; and in the French press of P. Samain. No one of these presses contained the combination of sliding standards with the central hub of the complainants' press, and no one was constructed upon the principle of keeping the platen level by means of the active resistance which standard and hub make to the tendency of the screw shaft to move towards the side of greater resistance, when the platen commences to tilt. The point upon which the defendants most strongly relied, in this part of the case, was, that the sliding standard of the Harding press and the central hub or wheel of the Gardner press could have been combined, and thus the complainants' press could have been constructed without the exercise of invention. This theory is not supported by the facts, and it is manifest that an operative machine could not, prior to the date of the complainants' invention, have been constructed from a combination of the two machines of Gardner and Harding, without inventive skill of more than ordinary character.

The remaining question is as to the terms of the decree. The complainants, on April 10th, 1874, and after suit had been brought, granted to the Boomer and Boschert Press Company the exclusive right to the reissued patent for all of the United States, except the New England states and the state of Ohio. The grantees, having obtained, by this grant, the exclusive right and title to the patent for the state of New York, and having recorded the deed in the patent office, could alone institute suit for any infringement which might be committed after the date of the grant, within that state. Moore v. Marsh, 7 Wall. [74 U. S.] 515, 521. The complainants had parted with all their previous title in the patent for the territory which was named in the grant. The grantees declared, in the agreement which they executed, and which was dated April 10th, 1874, that all the rights of the complainants, "so far as they are connected with said suit, with the profits and damages therein," are not to be affected by the deed. By this language, the grantees did not confer upon the complainants any right to damages for future infringements, and did not declare that any such right was understood by the parties to the grant to have been reserved.

The grantors made no express reservation in their deed, and retained nothing but their right to recover whatever sums might be determined to belong to them for infringements which had theretofore been committed. The "rights under said reissued letters patent, so far as they are connected with said suit," were the rights which they had to obtain compensation for the damage which they had previously suffered, and "the profits and damages therein," which were declared not to have been affected by the grant, were simply those profits and damages which they might then be entitled to recover. The complainants aver, in their bill, that they are the exclusive owners of the reissued letters patent for the state of New York. Since the filing of the bill they have conveyed all their title to the patent for that state, and are not now entitled to an injunction against an infringement therein. Wheeler v. McCormick [Case No. 17,499]. The understanding or agreement of the parties, that the right of the complainants to an injunction should not be varied by the grant of April 10th, 1874, does not alter the legal effect of that conveyance. If it had been averred in the bill, or in a supplemental bill, that the complainants are the owners of the patent for the New England states and the state of Ohio, and that the defendants are infringing, or threaten to infringe therein, this court could enjoin against such unlawful use. Wilson v. Sherman [Case No. 17,833].

Let there be a decree for the complainants, declaring the infringement, and directing an account of profits and an ascertainment of damages until April 10th, 1874, with costs.

[NOTE. Patent No. 108,753 was granted to Boomer. Boschert & Morse November 1, 1870; reissued January 28, 1873, No. 5,256.]